UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ERIC PARTANEN, | Case No.  1:21-cv-00588-BAM |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| WESTERN UNITED STATES PIPE BAND ASSOCIATION, et al., | (Doc. 37) |
| Defendants. | ORDER DENYING PLAINTIFF'S MOTIONS TO AMEND AS MOOT |
| | (Docs. 61, 63) |

## I.      Introduction

Plaintiff John Eric Partanen ("Plaintiff"), proceeding pro se, initiated this civil action on April 8, 2021.  This action proceeds on Plaintiff's First Amended Complaint against Defendants Western United States Pipe Band Association ("WUSPBA") and Jeff Mann (collectively "Defendants") arising from termination of his WUSPBA membership.  (Doc. 13.)

On July 26, 2021, Defendants filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) on the grounds that "each of them either fails to state a claim upon which relief can be granted, is barred by the statute of limitations, or fails to provide anything more than conclusory allegations that would support a finding on essential elements of the claims."  (Doc. 37 at 4.)  Plaintiff opposed the motion on July 26, 2021.[1]  (Doc. 42.)

---

[1]      In addition to opposing the motion to dismiss, Plaintiff filed multiple, subsequent motions to amend his complaint to eliminate bullying as a cause of action and to add breach of the duty to act in good faith and fair dealing as a cause of action.  (Docs. 61, 63.)  Because Plaintiff will be granted leave to amend his complaint, Plaintiff's motions to amend are unnecessary and will be denied as moot.

1  Defendants replied on August 9, 2021.  (Doc. 45.)  Although not permitted leave of court,
2  Plaintiff filed a rebuttal on August 12, 2021.  (Doc. 47.)

3        The Court directed that the pending motions, including the instant motion to dismiss,
4  would be heard and decided on the papers.  (Doc. 48.)  Based on the parties' consent, the action
5  was subsequently reassigned to a United States Magistrate Judge for all purposes pursuant to 28
6  U.S.C. § 636(c)(1).  (Doc. 57.)

7        Having considered the parties' briefs, arguments, and record in this action, Defendants'
8  motion to dismiss will be granted as discussed in further detail.

9        **II.**    **Allegations in First Amended Complaint**

10        Plaintiff is a professional Scottish bagpiper and former member of the WUSPBA, a
11  Nevada entity that regulates Scottish bagpiping, drumming, Scottish drum majoring, and bagpipe
12  band contests in eight western states, including California.  (Doc. 13 at ¶¶ 8, 10, 12)

13        In February 2018, WUSPBA terminated Plaintiff's membership.  (*Id.* at ¶ 12.)  Plaintiff
14  appealed the termination to the WUSPBA Board.  As a result of the dispute, and to reinstate
15  Plaintiff's membership, the parties entered into the Western United States Pipe Band Association
16  Music Board Informal Resolution Among the Parties John Partanen and the WUSPBA Executive
17  Committee ("Informal Resolution").  (Doc. 13 at ¶¶ 13-14; Ex. 2 at pp. 61-62.)

18        In 2019, there was an alleged incident at the United Scottish Society of Southern
19  California Highland Games.  Plaintiff was approached by a WUSPBA member, who reportedly
20  accused Plaintiff of cheating and threatened the band with disqualification.  After the contests,
21  Plaintiff approached the WUSPBA member, telling her that she had violated contest rules.  The
22  WUSBA member claimed Plaintiff was abusive, and Defendant Mann, WUSPBA's president,
23  called Plaintiff about the incident.  The matter was later dropped.  (Doc. 13 at ¶ 15.)

24        In 2020, Plaintiff sent emails to Defendant Mann asking for help recovering entry fees for
25  the 2020 Las Vegas Highland Games, which were about to be cancelled due to COVID-19.
26  Defendant Mann and WUSPBA reportedly viewed these emails as a breach of the Informal
27  Resolution.  Plaintiff alleges that Defendant Mann responded with threats and accusations of
28  bullying.  Plaintiff claims that these constituted false allegations of a crime and an effort to

1    coerce Plaintiff into silence.  (Doc. 13 at ¶ 16.)

2         Plaintiff subsequently decided to run for vice-president of WUSPBA.  Plaintiff claims

3    that Defendants viewed this as a hostile act.  Plaintiff ran his campaign by posting blogs on a

4    Facebook page prepared by WUSPBA member Gary Speed and entitled "wuspba elections."

5    (Doc. 13 at ¶ 17.)  Defendant Mann reportedly sent an email to Mr. Speed on May 12, 2020,

6    accusing Plaintiff and Mr. Speed of copyright infringement relating to the Facebook posts.

7    Plaintiff claims that there is no copyright or registered trademark for the term "WUSPBA" or

8    any derivations of it.  (*Id.* at ¶ 18.)  Plaintiff therefore alleges that Defendant Mann falsely

9    accused him of copyright infringement, resulting in defamation.

10        On September 2, 2020, Plaintiff sent an email to WUSPBA's president reminding him

11   that WUSPBA was bound by Chapter 82 of the Nevada Revised Statutes regarding the October

12   2020 annual general meeting.  This reminder allegedly was viewed as a hostile act by the

13   WUSPBA executive committee and Defendant Mann in breach of the Informal Resolution.

14   Plaintiff alleges that he was concerned that WUSPBA would not notify solo members of their

15   right to vote by proxy as required by the Nevada statutes.  Plaintiff asserts that WUSPBA did not

16   notify its members of this right.  WUSPBA also failed to gain advance consent before holding

17   the 2020 general meeting online due to COVID-19.

18        At the October 2020 general meeting, Plaintiff was given two minutes to attempt to

19   convince the membership in attendance to vote for him as the next vice president.  Plaintiff

20   reportedly was prepared to deliver a 30-minute speech and claims that the two minutes was

21   woefully inadequate.  He was not elected vice president.

22        After the 2020 general meeting, the newly elected WUSPBA Executive Committee

23   retained counsel in Reno, Nevada to justify termination of Plaintiff's WUSPBA membership.

24   WUSPBA accused Plaintiff of breaching the Informal Resolution when he contacted the

25   WUSPBA to ask for help recovering his entry fees from the Las Vegas Highland Games.

26   WUSPBA also claimed that Plaintiff made unreasonable demands and insisted that WUSPBA

27   return the fees, not the sponsor, and if the fees were not returned, then he would take legal action.

28   Plaintiff claims that none of his emails contained unreasonable demands or a threat to bring legal

1    action against WUSPBA.  WUSPBA also used Plaintiff's reminders that they must follow

2    Nevada statutes as a violation of the Informal Resolution.

3          After multiple conflicts with Plaintiff, WUSPBA elected to conduct a review of

4    Plaintiff's membership on December 5, 2020.  (*Id.* at ¶¶ 23-24.)  WUSPBA concluded its

5    membership review on December 11, 2020, and terminated Plaintiff's membership. (*Id.* at ¶ 26.)

6          On December 14, 2020, Plaintiff sent a letter objecting to termination of his membership.

7    He also sent a letter to Ken Sutherland, chairman of the WUSPBA Music Board, notifying him

8    of an appeal.  On December 17, 2020, Plaintiff received an email from WUSPBA's counsel

9    indicating that Plaintiff's appeals were denied.

10         Plaintiff then attempted to determine his new status and eventually hired counsel to gain

11   answers.  Plaintiff's counsel reportedly was informed that Plaintiff would not be allowed to

12   complete as a solo bagpiper in contests sanctioned by WUSPBA.  Plaintiff also could not lead or

13   perform with the bagpipe band he co-founded in contests sanctioned by WUSPBA or the band

14   would be disqualified.

15         On February 17, 2021, Plaintiff sent a personal appeal to WUSPBA's president, along

16   with a follow-up message requesting that he be allowed to lead and perform with the Kern

17   County Pipe Band.  WUSPBA's counsel responded, denying the personal appeals.

18         Gary Speed and the Kern County Pipe Band both requested that the dispute with

19   WUSPBA regarding Plaintiff's membership be submitted to binding arbitration.  These requests

20   were denied.  Plaintiff claims that he also attempted to send this dispute to mediation or an

21   informal settlement conference.

22         Plaintiff now brings this action against Defendants to reinstate his membership in the

23   WUSPBA.  He alleges (1) unenforceability of the Informal Resolution; (2) breaches of the

24   Informal Resolution; (3) defamation of character by Defendant Mann; (4) bullying by the

25   WUSPBA; (5) coercion by WUSPBA and Defendant Mann; (6) intentional infliction of

26   emotional distress; and (7) statutory violations of Nevada law.  Plaintiff seeks declaratory and

27   equitable relief, along with damages.  (*See generally* Doc. 13.)

28   ///

III.    **Defendants' Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. Cty. of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). However, the Court need not credit "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555–57.

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57.

A.    **Declaratory Relief**

In his first cause of action, Plaintiff contends that the Informal Resolution is unenforceable. He alleges that he was under undue influence from the WUSPBA Music Board and WUSPBA Executive Committee to sign it. Plaintiff's attorney advised him against any negotiations of the terms of the agreement as WUSPBA may have withdrawn its offer. Plaintiff

1    therefore alleges that negotiations were not an option.  Plaintiff further alleges that the terms of

2    the agreement were confusing, ambiguous, and unconscionable.  Plaintiff seeks a declaration

3    from the Court that the Informal Resolution is null, void, and unenforceable.  (Doc. 13 at ¶¶ 33-

4    34.)

5        In moving to dismiss this cause of action, Defendants argue that Plaintiff fails to identify

6    a single act by WUSPBA that would constitute undue influence.  Defendants assert that all of

7    Plaintiff's allegations regarding undue influence pertain to actions taken by his attorney, who is

8    not a party to the Informal Resolution.  Defendants further argue that Plaintiff fails to allege any

9    facts supporting substantive or procedural unconscionability.  To that end, Defendants contend

10   that Plaintiff does not identify a single term in the Informal Resolution that is objectively

11   unreasonable to show substantive unconscionability.  Defendants also contend that Plaintiff

12   admits he was free to consult with independent counsel before signing the Informal Resolution,

13   eliminating any implication that the agreement was procedurally unconscionable.  (Doc. 37 at 6-

14   7.)

15       Plaintiff counters that the Informal Resolution is unenforceable due to undue influence

16   and unconscionability and that Defendants breached the Informal Resolution when they placed

17   him on probation.  He contends that his claims are clearly stated and supported by

18   documentation.  (Doc. 42 at 3-4.)

19                1.  Undue Influence

20       Undue influence consists of the following:

21       1.  In the use, by one in whom a confidence is reposed by another, or who holds
             a real or apparent authority over him, of such confidence or authority for the
22           purpose of obtaining an unfair advantage over him;
         2.  In taking an unfair advantage of another's weakness of mind; or,
23       3.  In taking a grossly oppressive and unfair advantage of another's necessities
             or distress.
24

25   Cal. Civ. Code § 1575.[2]  "[U]nder California law a party cannot successfully invoke the doctrine

26   of 'undue influence' to escape an apparent contract unless that party proves two things: (1) that

27   _____

28   [2]  Federal courts sitting in diversity apply state substantive law and federal procedural law.  *In re County of Orange*, 784 F.3d 520, 523-24 (9th Cir. 2015).

6

1  [he] had a lessened capacity to make a free contract and (2) that the other party applied its

2  excessive strength to [him] to secure [his] agreement."  *Olam v. Cong. Mortg. Co.*, 68 F.Supp.2d

3  1110, 1141 (N.D. Cal. 1999).  "Although undue influence typically applies in cases where one

4  party's lessened capacity is due to physical, mental or emotional constraints, courts have held

5  that undue influence is flexible and requires an analysis of all of the relevant facts and

6  circumstances." *Big Sky Ventures I, L.L.C. v. Pac. Cap. Bancorp., N.A.*, No. CV 08-00231 DDP

7  (VBKx), 2008 WL 11334474, at *6 (C.D. Cal. May 6, 2008), citing *Olam*, 68 F.Supp.2d at 1141-

8  42.

9       Plaintiff's first amended complaint fails to allege facts demonstrating undue influence.

10  Plaintiff does not include factual allegations suggesting he had a lessened capacity to make a free

11  contract or that WUSPBA applied its excessive strength to secure his agreement with the terms

12  of the Informal Resolution.  Indeed, Plaintiff admits that he sought the advice of his own attorney

13  prior to signing the Informal Resolution.  (Doc. 13 at ¶ 33.)

14              2.  <u>Unconscionability</u>

15       In California, a contract must be both procedurally and substantively unconscionable to

16  be rendered invalid. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013).

17  California courts invoke a sliding scale, and the more substantively oppressive the contract term,

18  the less evidence of procedural unconscionability is required, and vice versa. *Nagrampa v.*

19  *MailCoups Inc.*, 469 F.3d 1257, 1280-81 (9th Cir. 2006) ("even if the evidence of procedural

20  unconscionability is slight, strong evidence of substantive unconscionability will tip the scale.");

21  *Compound Sols., Inc. v. CoreFX Ingredients*, LLC, No. 19cv2058-JAH (WVG), 2020 WL

22  3639663, at *3 (S.D. Cal. July 6, 2020).  Procedural unconscionability "addresses the

23  circumstances of contract negotiation and formation, focusing on oppression or surprise due to

24  unequal bargaining power." *Pinnacle Museum Tower Ass'n. v. Pinnacle Market Development*,

25  55 Cal.4th 223, 246 (2012).  "Substantive unconscionability pertains to the fairness of an

26  agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.*

27  "A contract term is not substantively unconscionable when it merely gives one side a greater

28  benefit;" rather, the term must be "so one-sided as to 'shock the conscience.'"  *Id.*

1    Plaintiff's first amended complaint fails to allege facts demonstrating procedural or

2  substantive unconscionability to support declaratory relief.  As noted above, Plaintiff admits that

3  he consulted with his attorney before signing the Informal Resolution, eliminating an inference

4  that the agreement was procedurally unconscionable.  Plaintiff's attorney reportedly advised

5  against any negotiation of the terms of the Informal Agreement.  (Doc. 13 at ¶ 33.)

6    Plaintiff also fails to demonstrate substantive unconscionability by identifying any terms

7  in the Informal Resolution that are overly harsh or one-sided.  Plaintiff takes issue with the

8  requirement in the Informal Resolution that he assign all administrative activity concerning pipe

9  bands he is involved with to other designated representatives of those bands.  (Doc. 13 at ¶ 34.)

10  However, Plaintiff's conclusory assertion that this term is unconscionable is not sufficient to

11  demonstrate that it is overly harsh or one-sided such that it shocks the conscience.  Plaintiff's

12  additional allegations that certain terms in the Informal Resolution were confusing or ambiguous

13  also do not demonstrate that the terms were unfair, overly harsh, or one-sided.

14    Based on the above, the Court finds that Plaintiff fails to state a cause of action for

15  declaratory relief based on undue influence or unconscionability.  In light of Plaintiff's existing

16  allegations, it does not appear that Plaintiff can allege additional facts to state a cognizable claim

17  based on undue influence or unconscionability  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

18  2000).  Accordingly, Defendants' motion to dismiss this cause of action will be granted with

19  prejudice.

20    **B.    Breach of the Informal Resolution**

21    In his second cause of action, Plaintiff alleges that Defendants breached the Informal

22  Resolution in three ways.  First, Plaintiff claims that Defendants breached the Informal

23  Resolution by failing to restore him as a WUSPBA member in good standing as evidenced by

24  Defendant Mann referring to Plaintiff's status as "probation."  Plaintiff next alleges that

25  Defendants breached the Informal Resolution by failing to provide him with a signed, dated copy

26  of the Informal Resolution until May 13, 2021.  Third, Plaintiff alleges that Defendants failed to

27  work with and welcome him as they do any other member.  (Doc. 13 at ¶ ¶ 36-37.)

28    Defendants contend that Plaintiff fails to allege sufficient facts to overcome a motion to

1   dismiss.  In particular, Defendants argue Plaintiff fails to adequately plead that (1) he fully

2   complied with the terms of the Informal Resolution, (2) Defendants breached the Informal

3   Resolution, or (3) Plaintiff was damaged because of any alleged breach.  (Doc. 37 at 8-9.)

4        Plaintiff's opposition is not entirely clear.  He asserts that he does not seek enforcement

5   of the Informal Resolution, but instead seeks a declaration that WUSPBA breached the

6   agreement, and that the agreement could not be used as a justification to terminate his WUSPBA

7   membership.  (Doc. 42 at 6.)  Plaintiff asserts that he was damaged "as a result of the breaches

8   by the defendants . . . when the defendants used that agreement to wrongfully terminate his

9   membership on December 11, 2020."  (*Id.*)  Plaintiff also asserts that the damages were not

10  apparent until he received a March 19, 2020 e-mail from Defendant Mann stating that he was on

11  probation, which Plaintiff alleges was in violation of the Informal Resolution.  (*Id.* at 7.)

12       To state a claim for breach of contract under California law, Plaintiff must allege (1) the

13  existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3)

14  defendant's breach of the contract; and (4) damages flowing from the breach. *CDF Firefighters*

15  *v. Maldonado*, 158 Cal.App 4th 1226, 1239 (2008).  At a minimum, "[t]he complaint must

16  identify the specific provision of the contract allegedly breached by the defendant." *A.B.*

17  *Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F.Supp.3d 727, 735 (E.D. Cal.

18  2020).

19       Plaintiff fails to state a cognizable breach of contract claim.  First, as Defendants

20  correctly note, Plaintiff fails to adequately allege his performance (or excuse for

21  nonperformance) under the Informal Resolution.  Indeed, Plaintiff's first amended complaint

22  explicitly alludes to his violation of a term in the Informal Resolution when he threatened legal

23  action in his correspondence.  (Doc. 13 at ¶ 35 ("The third term was that the plaintiff refrain from

24  making threats of legal action against the WUSPBA.  The plaintiff did state in one of his emails

25  that he would take legal action … The WUSPBA was not directly or indirectly threatened by the

26  plaintiff's statement because the only legal action possible would have been against the contest

27  sponsor . . . .").)  Moreover, as discussed below in greater detail, Plaintiff's own exhibits

28  undermine any inference that he performed under the Informal Resolution and instead indicate

9

1    that he engaged in conduct violating its express terms.

2           Second, Plaintiff fails to adequately allege that Defendants breached the Informal

3    Resolution.  As noted above, Plaintiff alleges that Defendants breached the Informal Resolution

4    by failing to reinstate his membership in good standing and instead placing him on probation.

5    Plaintiff's allegations do not establish that Defendants failed to restore Plaintiff as a WUSPBA

6    member in good-standing subject to the conditions set forth in the Informal Resolution.  That

7    Defendant Mann referred to Plaintiff as on "probation" in an email is not sufficient to state a

8    claim for breach of contract.  Rather, Defendant's Mann reference plainly suggests that

9    Plaintiff's membership in good standing was conditioned upon his compliance with the terms of

10   the Informal Resolution.

11          Plaintiff also alleges that Defendants breached the Informal Resolution by failing to

12   provide him with a signed, dated copy of the agreement.  However, Plaintiff cites no provision

13   demonstrating that this purported failure was a breach of the Informal Resolution.  Critically,

14   Plaintiff does not assert that he was prevented from requesting or otherwise obtaining a signed

15   copy at any time.

16          Plaintiff additionally alleges that WUSPBA failed to work with and welcome him as they

17   do any other member in violation of the express terms of the Informal Resolution.  This

18   allegation is sufficiently indiscriminate such that it fails to support a cognizable breach of

19   contract claim.   The Court recognizes Plaintiff's assertion that WUSPBA failed to help him

20   recover entry fees from the 2020 Las Vegas Highland Games and this failure demonstrated

21   WUSPBA's refusal to work with him like any other member in good standing.  (Doc. 13 at §

22   37.)

23          The exhibits attached to the first amended complaint show otherwise.  A review of

24   Plaintiff's email correspondence to WUSPBA dated March 11, 2020, and attached to the first

25   amended complaint, indicates that Plaintiff contacted WUSPBA personally <u>and</u> on behalf of his

26   Kern County Pipe Band in an effort to recover fees.  Indeed, Plaintiff's email expressly requests

27   that WUSPBA "consider this an official notice and request from the Kern County Pipe Band and

28   from the Pipe Major of that band:  John Eric Partanen, PhD . . . ."  (Ex. 4 to Doc. 13.)  Plaintiff's

1    communication on behalf of the Kern County Pipe Band violated the written terms of the

2    Informal Resolution, which required Plaintiff to assign all WUSPBA-related administrative

3    activity concerning the Pipe Bands he was involved with to other designated representatives of

4    those Pipe Bands.  (Ex. 2 to Doc. 13, Informal Resolution.)  Plaintiff cannot be heard to

5    complain about Defendants' conduct occurring after Plaintiff's breach (or nonperformance) of

6    the Informal Resolution.

7            As a final matter, Plaintiff does not allege that he was damaged by any of the asserted

8    breaches of the Informal Resolution.  Instead, Plaintiff claims that he was damaged because

9    WUSPBA terminated his membership in reliance on the Informal Resolution.  The Informal

10   Resolution does not preclude termination of Plaintiff's membership. Plaintiff's theory of

11   damages based on termination of his membership under the terms of the Informal Resolution is

12   insufficient to support a breach of contract claim against WUSPBA or Defendant Mann.

13           For these reasons, Defendants' motion to dismiss Plaintiff's breach of contract claim will

14   be granted.  However, Plaintiff will be granted an opportunity to amend this claim to the extent

15   he is able to do so in good faith.

16           **C.      Defamation**

17           In his third cause of action, Plaintiff asserts defamation and defamation per se.   Plaintiff

18   alleges three instances of defamation: (1) when Defendant Mann made a "libelous statement that

19   the plaintiff . . . was infringing copyright owned by the defendant, WUSPBA,"; (2) when

20   WUSPBA terminated Plaintiff's membership; and (3) when Defendant Mann accused Plaintiff of

21   bullying.  (Doc. 13 at ¶¶ 38-40.)

22           To state a prima facie case for defamation, Plaintiff must allege facts that show

23   Defendants made "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and

24   that (e) has a natural tendency to injure or that causes special damage." *Narayan v. Compass

25   Grp. USA, Inc.*, 284 F.Supp.3d 1076, 1085 (E.D. Cal. 2018) (quoting *Taus v. Loftus*, 40 Cal.4th

26   683, 720 (2007). Publication is communication of the allegedly defamatory statement "to a third

27   person who understands its defamatory meaning as applied to the plaintiff." *Id.* (quoting *Shively

28   v. Bozanich*, 31 Cal.4th 1230, 1242 (2003)).  "Communicating the allegedly defamatory

1   statement to the plaintiff alone, without more, does not constitute 'publication' for the purposes

2   of evaluating a defamation claim." *Id.* "Under California law, defamation per se is 'libel which

3   is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement,

4   innuendo or other extrinsic fact, is said to be a libel on its face.'" *Cleveland v. Ludwig Inst. for*

5   *Cancer Rsch. Ltd.*, No. 19cv2141 JM (JLB), 2020 WL 3268578, at *12 (S.D. Cal. June 17, 2020)

6   (quoting Cal. Civ. Code § 45a).

7          Defendants contend that Plaintiff's defamation and defamation per se claims are

8   deficient.  First, Defendants argue that Defendant Mann's statement regarding copyright

9   infringement was not defamatory and was a privileged, pre-litigation statement directed to a third

10  party.  Plaintiff counters that the copyright statement was not a privileged, pre-litigation demand

11  and was clearly directed at him.

12         At issue is the following email message, attached as an exhibit to the first amended

13  complaint, purportedly sent from Defendant Mann to Plaintiff and Gary Speed on May 12, 2020:

14         John,

15         This is all I received.  Also, we need to talk about your facebook page that Gary
           put up.  You cannot post a facebook page using the WUSPBA.org.  It is against
16         US copywrite law according to one of our lawyers. This is what he says about the
           verbiage:  "The way the Courts interpret copyright law is not to look at the
17         differences, but look at the similarities.  He is misleading the public into believing
           this is a WUSPBA sponsored page."  So you will need to change the wording.
18
           I am however, happy to put your information on the WUSPBA website.
19
           Best,
20
           Jeff
21

22  (Doc. 13 at Ex. 6.)  Plaintiff alleges that this statement was made to Gary Speed and "on belief to

23  twelve other members of the WUSPBA Executive Committee."  (*Id.* at ¶ 38.a.)  Plaintiff further

24  alleges that Defendant Mann failed to use reasonable care to determine the truth or falsity of the

25  accusation of copyright infringement, asserting that there is no registered copyright for

26  WUSPBA.  (*Id.* at ¶ 38.d.)

27         At a basic level, Plaintiff's allegations do not establish that the alleged defamatory

28  statement was communicated to a third party.  The email message concerned statements on a

1 Facebook page reportedly set up by Gary Speed and the message was directed to both Plaintiff

2 and Gary Speed.  Accordingly, any statement by Defendant Mann concerning copyright

3 infringement was communicated directly to the person or persons allegedly responsible for the

4 Facebook page and its content, not a disinterested or independent third party.  Plaintiff's

5 assertion "on belief" that the statement was made to members of the WUSPBA Executive

6 Committee is speculative and not sufficient to demonstrate publication to a third party.

7       Second, Defendants argue that Plaintiff fails to identify any statement made by WUSPBA

8 that was defamatory.  The Court agrees.  Plaintiff alleges that WUSPBA "committed a

9 Defamatory act against the plaintiff when it wrongfully terminated the plaintiff's membership in

10 the WUSPBA on December 11, 2020 over truly trivial matters, accusing the plaintiff of

11 breaching an agreement that the defendant had already breached in 2018, and of violations of the

12 WUSPBA Code of Conduct of which each and every such violation is without merit."  (Doc. 13

13 at ¶ 39.)  Plaintiff further alleges that the "membership of the WUSPBA believes the plaintiff has

14 done something terrible or evil to have been expelled from the WUSPBA causing irreparable

15 damage to the plaintiff's reputation and causing the plaintiff to needlessly suffer shame,

16 mortification, and hurt feelings."  (*Id.*)  These allegations are not sufficient to support a

17 defamation cause of action against WUSPBA.  At a minimum, Plaintiff fails to allege publication

18 of a false statement as there is no dispute that Plaintiff's WUSPBA membership was terminated.

19       Third, Defendants argue that Plaintiff's claim regarding Defendant Mann's alleged

20 accusations of bullying are time barred. They also were not published and constituted opinion

21 only. Plaintiff counters that his claims regarding Defendant Mann's bullying statements are not

22 time barred because those claims were not rejected by the WUSPBA Executive Committee until

23 December 5, 2020.

24       At issue appear to be two separate emails.  First, is an email from Defendant Mann to

25 Plaintiff dated March 19, 2020, which states as follows:

26       John,

27       As you know….NO MORE THREATS!!! Period!  We are working on the money
situation.  I am dealing with a 5.7 earthquake and COVID-19.  I nor any of the
28       WUSPBA EC will tolerate your bullying anymore.  If you want to remain an

1    adjudicator you will stop this instant.

2    I know your money is important.  We are working on that.  You will not make
     demands.  PERIOD!

3    Best,

4    Jeff

5

6    (Doc. 13 at Ex. 4.)  Second, is a subsequent email from Defendant Mann to Plaintiff on

7    March 20, 2020 at 8:20 AM stating, in relevant part, as follows:

8        Now, I want to talk to you a moment about your bullying attitude.  You are
         breaking the WUSPBA Code of Conduct for adjudicators.  I think that you have a
9        lot to offer on our adjudicator panel.  Your knowledge and judging ability brings a
         great talent to the WUSPBA.  I do not want to lose you as one of our adjudicators.
10
         As far as your thoughts on an online contest, I think it is a brilliant idea.
11
         Now, I want you to shape up and stop this nonsense.  John, you really have some
12       brilliant ideas at times.  However, the way you go about presenting them in a
         demanding and bullying manner is not the way to do it.  It just will not be
13       tolerated.  Try honey instead of salt into the wounds that you have already created
         over the years.
14

15   (Doc. 13 at Ex. 4.)

16       The Court finds Plaintiff's amended complaint fails to state a cognizable defamation

17   claim based on Defendant Mann's alleged accusations of bullying.  There is no indication that

18   the statements at issue were published to a third party.   As indicated above, communicating the

19   allegedly defamatory statement to the plaintiff alone, does not constitute publication for the

20   purposes of a defamation claim.  *Narayan*, 284 F.Supp.3d at 1085.  Even if communicated to a

21   third party, the statements do not appear to constitute anything more than Defendant Mann's

22   opinion concerning Plaintiff's conduct.  A statement of opinion will not suffice to state a claim

23   for defamation.  *Avenmarg v. Humboldt Cty.*, No. 19-cv-05891-RMI, 2020 WL 4464876, at *12

24   (N.D. Cal. Aug. 4, 2020), appeal dismissed, No. 20-16716, 2020 WL 7212390 (9th Cir. Nov. 25,

25   2020).

26       Based on the above, the Court finds that Plaintiff fails to state a cause of action for

27   defamation or defamation per se.  Based on the exhibits attached to the first amended complaint,

28   it does not appear that Plaintiff can allege additional facts sufficient to state a cognizable claim.

1  *Lopez*, 203 F.3d at 1130.  Accordingly, Defendants' motion to dismiss this cause of action will

2  be granted with prejudice.

3        **D.      Bullying**

4        In his fourth cause of action, Plaintiff alleges that WSUPBA has bullied and continues to

5  bully him by declaring, through its counsel, that Plaintiff and his bagpipe band will be

6  disqualified if he enters and competes in WUSPBA sanctioned events.  (Doc. 13 at ¶ 41.)

7        Defendants argue that this claim should be dismissed with prejudice because "bullying"

8  is not a cause of action.  Plaintiff admits that bullying "is not a cognizable complaint unless it is

9  in the form of First Amendment Retaliation."  (Doc. 42 at 12.)  Plaintiff indicates that he will

10  petition the Court to add such a claim to his complaint.  (Doc. 42 at 11.)   The Court notes that

11  Plaintiff also has requested leave to amend his complaint to eliminate bullying as a cause of

12  action, remarking that he has become aware and verified that bullying is not a cognizable cause

13  of action in federal court.  (*See* Doc. 61 at 5.)

14        Based on Plaintiff's concession that bullying is not a cognizable cause of action,

15  Plaintiff's fourth cause of action will be dismissed with prejudice.  However, Plaintiff will not be

16  precluded from amending his complaint to allege an appropriate retaliation-based claim to the

17  extent that he can do so in good faith.  The Court makes no determination regarding the merits of

18  such a claim at this time.

19        **E.      Coercion**

20        In his fifth cause of action, Plaintiff asserts a violation of the California Bane Act, Cal.

21  Civ. Code § 52.1.  (Doc. 13 at ¶ 42.)  Plaintiff alleges that Defendant Mann sent threatening

22  emails to coerce Plaintiff to cease asking for help in the recovery of entry fees from the 2020 Las

23  Vegas Highland Games.  Plaintiff further alleges that Defendant Mann used coercion to interfere

24  with and stop Plaintiff's campaign for Vice-President of the WUSPBA when Defendant Mann

25  allegedly accused Plaintiff of copyright infringement in email correspondence.  (*Id.*)

26        California's Bane Act creates a private cause of action against individuals who interfere

27  "by threat, intimidation, or coercion, or attempt[ ] to interfere by threat, intimidation, or coercion,

28  with the exercise or enjoyment by an individual or individuals of rights secured by the

Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of [California]." Cal. Civ. Code § 52.1(b)–(c). A plaintiff bringing claims under the Bane Act must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was done through threats, intimidation, or coercion. *Scalia v. County of Kern*, 308 F.Supp.3d 1064, 1080 (E.D. Cal. 2018); *Allen v. City of Sacramento*, 234 Cal.App.4th 41, 67 (Cal. Ct. App. 2015). Speech alone does not satisfy the threat, intimidation, or coercion requirement unless the speech threatened violence. *Gifford v. Hornbrook Fire Prot. Dist.*, No. 2:16-CV-0596-JAM-DMC, 2021 WL 4168532, at *28 (E.D. Cal. Sept. 14, 2021); *Feiger v. Smith*, No. 1:14-cv-01920-DAD-EPG, 2017 WL 431352, at *1 (E.D. Cal. Jan. 31, 2017) ("An allegation of either violence or the threat of violence is only necessary if the alleged violations of the Bane Act are based entirely on speech.").

Plaintiff's allegations are insufficient to support a violation of the Bane Act.  He does not allege that any of the statements or speech at issue in Defendant Mann's emails threatened violence.  He also has not plead any facts suggesting threats of violence in his amended complaint.  In light of Plaintiff's existing allegations, it does not appear that Plaintiff can allege additional facts to state a cognizable claim.  Accordingly, Defendants' motion to dismiss this cause of action will be granted with prejudice.

### F.     Intentional Infliction of Emotional Distress

In his sixth cause of action, Plaintiff alleges intentional infliction of emotional distress. (Doc. 13 at ¶ 43.)   "A complaint states a claim for intentional infliction of emotional distress when it alleges (1) the defendant's conduct was outrageous; (2) the defendant either intended to cause emotional distress or acted with reckless disregard to the probability of causing emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct actually and proximately caused that emotional distress." *Tennyson v. Sacramento*, No. 2:19-cv-00429-KJM-EFB, 2021 WL 2142733, at *9 (E.D. Cal. May 26, 2021) (citing *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 300 (1988).)  "Conduct, to be outrageous, must be so extreme as to exceed all bounds of that usually tolerated in a civilized society."  *King v. AC & R Advert.*, 65

1  F.3d 764, 770 (9th Cir. 1995) (citation and quotation omitted).  To be actionable, emotional

2  distress must be "of such substantial quantity or during quality that no reasonable man in a

3  civilized society should be expected to endure it." *Simo v. Union of Needletrades*, 322 F.3d 602,

4  622 (9th Cir. 2003) (citation omitted). A claim for intentional infliction of emotional distress is

5  subject to a two-year statute of limitations. Cal. Civ. Proc. Code § 335.1; *Van Osten v. Home*

6  *Depot, U.S.A., Inc.*, No. 19-CV-2106 TWR (BGS), 2021 WL 3913483, at *12 (S.D. Cal. Aug.

7  27, 2021)

8         Insofar as Plaintiff's amended complaint asserts a claim for intentional infliction of

9  emotional distress based on events taking place in November 2017 and February 2018, such a

10  claim is time barred.  (Doc. 13 at ¶¶ 44-45.)  Plaintiff did not initiate this action until April 8,

11  2021, more than two years after these alleged events.  (Doc. 1.)  Accordingly, Plaintiff's claim

12  for intentional infliction of emotional distress based on events taking place more than two years

13  prior to April 8, 2021, will be dismissed with prejudice.

14         Plaintiff's amended complaint additionally bases a claim for intentional infliction of

15  emotional distress on the termination of his WUSPBA membership at the end of 2020.  In

16  relevant part, Plaintiff alleges as follows:

17
18
19
20
21
22

> At the end of 2020, the newly elected WUSPBA Executive Committee, many of
> whom were on the 2018 WUSPBA Executive Committee, met after the 2020
> WUSPBA annual general meeting and voted to terminate and expel the plaintiff
> from the WUSPBA.  The 2021 WUSPBA Executive Committee knew that this
> would cause the plaintiff to again suffer an enormous amount of emotional
> distress, while at the same time they could have their revenge by retaliating
> against the plaintiff.  The defendants, WUSPBA, terminated the plaintiff's
> membership maliciously, and expelled him from the WUSPBA over truly trivial
> matters causing the plaintiff to suffer an extraordinary amount of severe
> emotional distress.  Against all the required elements for intentional infliction of
> emotional distress by the defendant upon the plaintiff are present.

23  (Doc. 13 at ¶ 46.)

24         These allegations are insufficient to support a cognizable claim for intentional infliction

25  of emotional distress.  Plaintiff's amended complaint fails to adequately allege outrageous

26  conduct by any defendant that is so extreme as to exceed all bounds of that usually tolerated in a

27  civil society.  Termination of Plaintiff's membership in the WUSPBA does not equate with

28  outrageous conduct, as a matter of law.  Plaintiff's conclusory assertions also do not suffice.  It is

1   not evident on the face of the complaint or in any relevant exhibits that Plaintiff can allege

2   additional facts to state a cognizable claim.  Accordingly, Plaintiff's cause of action for

3   intentional infliction of emotional distress based on termination of his WUSPBA membership

4   will be dismissed with prejudice.  m

5        **G.**    **Statutory Violations of Nevada Law**

6          In his seventh cause of action, Plaintiff alleges that WUSPBA violated Nevada Revised

7   Statutes ("NRS"), Chapter 82, governing Nonprofit Corporations.  In particular, Plaintiff

8   contends that WUSPBA violated NRS 82.251, 82.321 and 82.316.  (Doc. 13 at ¶¶ 47-50.)

9         <u>NRS 82.251</u>

10         NRS 82.251 concerns expulsion, suspension or termination of membership and provides,

11  in relevant part, as follows:

12     1.   A member may not be expelled or suspended, and a membership may not be
    terminated or suspended, except pursuant to a procedure that is fair and
13  reasonable and is carried out in good faith.  This section does not apply to
    termination of a membership at the end of a fixed term.

14
15     2.  A procedure is fair and reasonable when it is fair and reasonable taking into
    consideration all of the relevant facts and circumstances.  In addition, a
    procedure is fair and reasonable if it provides:
16
17       (a) Not less than 15 days' prior written notice of the expulsion, suspension or
    termination, and the reasons for it; and

18
         (b) An opportunity for the member to be heard, orally or in writing, not less
19  than 5 days before the effective date of the expulsion, suspension or
    termination by a person authorized to decide that the proposed expulsion,
20  termination or suspension not take place.

21  Nev. Rev. Stat. § 82.251(1)-(2).

22        In his first amended complaint, Plaintiff alleges that WUSPBA violated NRS

23  82.251(2)(b) in February 2018 when the Executive Committee failed to allow Plaintiff an

24  opportunity to be heard and failed to have a person authorized to decide that Plaintiff's

25  membership not be terminated.  Plaintiff asserts that this failure was a "major factor in the

26  decision by the 2018 WUSPBA Music Board to overturn the plaintiff's membership termination

27  in May 2018." (Doc. 13 at ¶ 47.)  Plaintiff further alleges that WUSPBA violated NRS

28  82.251(2)(b) when it terminated his membership effective December 11, 2020.  (*Id*. at ¶ 48.)

18

1        Defendants argue that it is unclear whether NRS 82.251 creates a private cause of action.

2   Defendants claim that the statute appears to contemplate an internal challenge to any purported

3   violation because NRS 82.251(3) explicitly states that "[a] proceeding challenging an expulsion,

4   suspension or termination, including a **proceeding** in which defective notice is alleged, must be

5   begun within 1 year after the effective date of the expulsion, suspension or termination."

6   (emphasis added).  Defendants argue that even if it does create a private right of action, NRS

7   82.251 establishes a one-year statute of limitations and Plaintiff's allegations concerning the

8   2018 termination of his membership are time barred.  (Doc. 37 at 17.)  With regard to Plaintiff's

9   membership termination in December 2020, Defendants argue that WUSPBA complied with all

10  of the requirements of NRS 82.251, and that Plaintiff attached proof of WUSPBA's compliance

11  to his first amended complaint.

12       Assuming without deciding that NRS 82.251 creates a private cause of action, the Court

13  agrees with WUSPBA that Plaintiff's allegations regarding his 2018 termination are time barred

14  under NRS 82.251(3).  Moreover, Plaintiff's own allegations indicate that any purported

15  violation of NRS 82.251 was corrected or otherwise ameliorated when the WUSPBA Music

16  Board overturned Plaintiff's membership termination.  (Doc. 13 at ¶ 47.)

17       With respect to termination of Plaintiff's membership in 2020, the Court finds that

18  Plaintiff fails to include sufficient factual allegations demonstrating that WUSPBA violated the

19  provisions of NRS 82.251.  Indeed, Plaintiff's exhibits attached the first amended complaint

20  belie any argument that WUSPBA failed to comply with NRS 82.251.  According to the exhibits,

21  Plaintiff received written notice on November 20, 2020 that the WUSPBA Executive Committee

22  would review his membership at a special meeting on December 5, 2020.  The notice identified

23  the reasons for the membership review and informed Plaintiff that he would be given an

24  opportunity to speak, to answer any questions the Executive Committee might have, or to explain

25  his conduct. Plaintiff also was permitted to submit a written statement and any supporting

26  documents no later than November 30, 2020.  (Doc. 13 at Ex. 9.)  This notice was consistent

27  with the requirements of NRS 82.251 that Plaintiff receive not less than 15 days' prior written

28  notice of the expulsion, suspension or termination, and the reasons for it, and that he be

19

1  permitted an opportunity to be heard in writing by the Executive Committee not less than 5 days

2  before the membership review and termination of his membership.  Accordingly, Plaintiff cannot

3  state a cognizable claim based on a violation of NRS 82.251, and Defendants' motion to dismiss

4  this claim will be granted with prejudice.

5      NRS 82.321 and 82.316

6      In his seventh cause of action, Plaintiff alleges that WUSPBA violated NRS 82.321

7  regarding members' proxy voting.  NRS 82.321 provides in relevant part that "[a]t any meeting

8  of the members of any corporation, any member may designate another person or persons to act

9  as a proxy or proxies."  Nev. Rev. Stat. § 82.321(1).  The remainder of the statute addresses a

10  valid means by which a member may grant proxy authority and length of time such proxy is

11  valid.  Nev. Rev. Stat. § 82.321(2)-(4).  Plaintiff contends that WUSPBA allows member pipe

12  bands to vote by proxy, but has refused to allow solo pipers, solo drummers, and solo drum

13  majors to vote by proxy.  (Doc. 13 at 27.)

14      Plaintiff further alleges that WUSPBA violated NRS 82.316 regarding determination of

15  members entitled to notice of and to vote at meetings.  NRS 82.316 states as follows:

16      1.   Unless contrary provisions are contained in the articles or bylaws, the
     directors may prescribe a period not exceeding 60 days before any meeting of
17      the members during which no transfer of memberships on the books of the
     corporation may be made, or may fix a day not more than 60 days before the
18      holding of any meeting of members as the day as of which members entitled
     to notice of and to vote at the meeting must be determined.  Only members of
19      record on that day are entitled to notice or to vote at the meeting.

20      2.  The directors may adopt a resolution prescribing a date upon which the
     members of record are entitled to give written consent pursuant to NRS
21      82.276.  The date prescribed by the directors may not precede nor be more
     than 10 days after the date the resolution is adopted by the directors.  If the
22      directors do not adopt a resolution prescribing a date upon which the members
     of record are entitled to give written consent pursuant to NRS 82.275 and:
23
     (a)  No prior action by the directors is required by this chapter, the date is
24         the first date on which a valid written consent is delivered in
         accordance with the provisions of NRS 82.276.
25
     (b)  Prior action by the directors is required by this chapter, the date is at
26         the close of business on the day on which the directors adopt the
         resolution taking the required action.
27

28  Nev. Rev. Stat. § 82.316.  Plaintiff contends that the WUSPBA has failed to determine and make

1   a list of membership in the WUSPBA and send to each member a notice that they are entitled to

2   vote both at the annual general meeting and by proxy if they are unable to attend the annual

3   general meeting.  (Doc. 13 at 28.)

4          Defendants argue, and Plaintiff has not contested, that neither NRS 82.321 nor NRS

5   82.316 provide for a private cause of action.  Plaintiff does not point to any provision in these

6   statutes authorizing a private cause of action.  "[W]hen a statute does not expressly provide for a

7   private cause of action, the absence of such a provision suggests that the Legislature did not

8   intend for the statute to be enforced through a private cause of action." *Hybrid Int'l, LLC v.*

9   *Scotia Int'l of Nevada, Inc.*, No. 2:19-CV-2077 JCM (EJY), 2020 WL 4289372, at *4 (D. Nev.

10  July 27, 2020), quoting *Richardson Constr., Inc. v. Clark Cnty. Sch. District*, 156 P.3d 21, 23

11  (Nev. 2007).  In the absence of express statutory authorization, Plaintiff cannot bring claims for

12  asserted violations of NRS 82.321 and NRS 82.316.  Accordingly, these claims will be dismissed

13  with prejudice.

14         **IV.    Plaintiff's Motions to Amend**

15         On September 9, 2021, Plaintiff filed a motion to amend his complaint to eliminate his

16  bullying cause of action and to add a cause of action for breach of the duty of good faith and fair

17  dealing.  (Doc. 61.)  Defendants opposed the motion in part on procedural grounds based on

18  Plaintiff's failure to include a proposed amended complaint.  (Doc. 62.)  In lieu of a reply, on

19  September 29, 2021, Plaintiff re-filed his motion to amend and lodged a proposed Second

20  Amended Complaint.  (Docs. 63, 64.)  Plaintiff subsequently filed a reply to Defendants'

21  opposition on October 5, 2021.  (Doc. 65.)

22         For the reasons discussed in this order, Plaintiff may file an amended complaint to cure

23  the identified deficiencies in this order, but any amended complaint may not amend the claims

24  dismissed with prejudice.  Accordingly, Plaintiff's motions seeking leave to amend his complaint

25  are unnecessary and will be denied as moot.

26         Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

27  each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*,

28  556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to

1   raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations

2   omitted).

3       Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated

4   claims in his amended complaint.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no

5   "buckshot" complaints).  Further, Plaintiff's amended complaint should not include those claims

6   dismissed with prejudice.

7        Finally, Plaintiff is advised that an amended complaint supersedes the original

8   complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012).  Therefore, Plaintiff's

9   amended complaint must be "complete in itself without reference to the prior or superseded

10  pleading."  Local Rule 220.

11                      **CONCLUSION AND ORDER**

12      Based on the foregoing, it is HEREBY ORDERED as follows:

13      1.  Defendants' motion to dismiss (Doc. 37) is granted;

14      2.  Plaintiff's first cause of action for declaratory relief based on undue influence or

15          unconscionability is dismissed with prejudice;

16      3.  Plaintiff's second cause of action for breach of contract is dismissed without

17          prejudice and with leave to amend;

18      4.  Plaintiff's third cause of action for defamation and defamation per se is dismissed

19          with prejudice;

20      5.  Plaintiff's fourth cause of action for bullying is dismissed with prejudice;

21      6.  Plaintiff's fifth cause of action for coercion and violation of California's Bane Act is

22          dismissed with prejudice;

23      7.  Plaintiff's sixth cause of action for intentional infliction of emotional distress is

24          dismissed with prejudice;

25      8.  Plaintiff's seventh cause of action for statutory violations of Nevada law is dismissed

26          with prejudice;

27      9.  Plaintiff's motions to amend (Docs. 61 and 62) are denied as moot;

28      10. Plaintiff is granted thirty (30) days from the date of service of this order to file a

1        Second Amended Complaint consistent with this order or, in the alternative, notify

2        the Court that he does not wish to proceed with this action;

3       11. Defendants will have twenty-one (21) days from the date of electronic service of any

4        Second Amended Complaint to answer or otherwise respond to the Second Amended

5        Complaint.

6

7   IT IS SO ORDERED.

8   Dated:   **November 4, 2021**           /s/ *Barbara A. McAuliffe*

9                                               UNITED STATES MAGISTRATE JUDGE